UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEON DUFF,<br><br>    Plaintiff,<br><br>v.<br><br>PATRICK GRANDBERRY,<br>PATRICK REILLY, and the<br>VILLAGE OF MAYWOOD,<br><br>    Defendants. | No. 14 C 8967<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Deon Duff initiated this lawsuit against Sergeant Patrick Grandberry, Officer Patrick Reilly, and the Village of Maywood, alleging that they violated his Fourth Amendment rights. Counts I and II assert that during an arrest, Grandberry and Reilly used unreasonable excessive force in violation of 42 U.S.C. § 1983. Count III asserts an indemnity claim against Maywood pursuant to 745 ILCS 10/9-102. Count IV alleges that the Village is liable for the deprivation of Duff's Fourth Amendment rights because of a formal policy that conflicts with the Constitution. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The Village has filed a Motion for Summary Judgment on Count IV. For the reasons set forth below, the Motion is granted.

# I. SUMMARY JUDGMENT

## A. Legal Standard

Summary judgment is proper only if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court views the evidence in the light most favorable to Duff, the nonmoving party, and draws all reasonable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). To avoid summary judgment, Duff, who bears the burden of proof, cannot rely on the pleadings alone, but must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see Celotex*, 477 U.S. at 324 (Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (citation omitted).

"The facts must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions and affidavits." *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985). The Court may also consider properly authenticated and admissible documents or exhib-

its. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006).

**B. Local Rule 56.1**

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." The nonmoving party must then "admit or deny every factual statement proffered by the moving party and [ ] concisely designate any material facts that establish a genuine dispute for trial." *Ricco v. Sw. Surgery Ctr., LLC*, 73 F. Supp. 3d 961, 965 (N.D. Ill. 2014) (citing LR. 56.1(b)(3)). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit a statement "of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." "To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted." *Ricco*, 73 F. Supp. 3d at 965. "Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded." *Id.* at 965–66 (citing *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("And hearsay is inadmissible in summary judg-

ment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions, which (especially affidavits) are not generally admissible at trial, are admissible in summary judgment proceedings to establish the truth of what is attested or deposed, provided, of course, that the affiant's or deponent's testimony would be admissible if he were testifying live.") (citations omitted)).

**C. Evidentiary Objections**

The Village contends that in Duff's response to the Village's statement of material facts, "he disputes or denies an asserted fact without any specific reference to supporting material." (Dkt. 143 at 1–2). The Court agrees. LR 56.1 requires the party disputing a statement of fact to cite "specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). Failure to cite specific evidence in disputing a statement of fact deems the fact admitted. *Buttron v. Sheehan*, No. 00 C 4451, 2003 WL 21801222, at *4 (N.D. Ill. Aug. 4, 2003) (deeming statements of fact uncontested where responding party filed to "provide 'specific references' to the material that shows that a factual disagreement exists"); *see Ricco*, 73 F. Supp. 3d at 965. Accordingly, the Court strikes Duff's responses to the Village's statement of facts asserted in paragraphs 6, 8, 15–17, 22, 24–26, 28, and 30–31 and deems the underlying statements admitted.

## II. FACTUAL ALLEGATIONS

On February 9, 2014, Duff asserts that he stopped running and indicated to pursuing police officers—Grandberry and Reilly, who were employed by the Village of Maywood Police Department (MPD)—that he would surrender by holding his hands

up. (Compl. ¶¶ 3, 4, 8). Duff alleges that despite standing still and not resisting arrest, Grandberry and Reilly assaulted and battered him, both before and after he was handcuffed, resulting in a separated shoulder and facial lacerations. (*Id.* ¶¶ 12–14, 16, 18). Duff has undergone extensive medical treatment for his injuries since February 2014, treatment which is continuing. (*Id.* ¶ 19).

The Village's "Use of Force—Response to Resistance" policy, as described in MPD General Order 1.3, was in effect on February 9, 2014. (Def's ¶ 1).[1] General Order 1.3 states that it is the policy of the MPD that police officers shall use only that force which is reasonably necessary to effectively bring an incident under control and to protect the lives of officers and others. (¶ 5). Section 1.3.2 directs officers to use only the amount and degree of force reasonably believed necessary, based on the totality of the circumstances as reasonably perceived by the officer at the time, to accomplish lawful objectives. (¶ 7). Section 1.3.2 incorporates by reference 720 ILCS 5/7-5, "Peace Officer's use of force in making arrest." (¶ 8). Section 1.3.5 indicates that an officer is justified in using less than deadly force when that officer reasonably believes it is necessary to effect an arrest. (¶ 10). Section 1.3.6 sets forth an escalating/de-escalating scale of use-of-force options when an officer determines that force is necessary and appropriate. (¶ 11).

Both Grandberry and Reilly knew about General Order 1.3 and had received a copy of it prior to February 2014. (¶ 2). Grandberry testified that General Order 1.3

---

[1] Unless otherwise indicated, all factual citations are to the Village's undisputed statements of material facts. (Dkt. 127; *see* Dkt. 134 (Pl's Resp.)).

contains a guideline for the use of force that might cause great bodily harm. (¶ 3 & Ex. 2 (Grandberry Dep.) at 52).Reilly testified that the MPD has polices on when nondeadly force may be used to affect an arrest. (¶ 3 & Ex. 3 (Reilly Dep.) at 14–15).

Since 2013, an MPD sergeant has been assigned to provide in-house, use-of-force training to MPD police officers, which includes the current state of the law on the use of force. (Def's ¶¶ 23, 28). MPD officers are provided use-of-force training both in the Village and at off-site locations. (¶¶ 24–26). Both Grandberry and Reilly attended at least two use-of-force training sessions prior to February 2014. (¶ 31).

### III. DISCUSSION

A claim of liability pursuant to the *Monell* doctrine requires a plaintiff to plead facts allowing the inference that the plaintiff's injuries resulted from official municipal policy, "that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "The plaintiff cannot simply hold a municipality vicariously liable for the actions of its employees." *Listenbee v. City of Harvey*, No. 11 C 3031, 2013 WL 5567552, at *2 (N.D. Ill. Oct. 9, 2013). In other words, "local governments are responsible only for their *own* illegal acts" and may not be held "vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (citations omitted).

To prevail on a *Monell* claim, a plaintiff must demonstrate that the municipal employee's unconstitutional act was caused by "(1) an express [municipal] policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice

that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (citation omitted). "In addition to showing that the municipality acted culpably in one of those three ways, the plaintiff must prove causation, demonstrating that the municipality, 'through its *deliberate* conduct, . . . was the "moving force" behind the injury alleged.'" *Young v. Vill. of Romeoville*, No. 10 C 1737, 2011 WL 1575512, at *1 (N.D. Ill. Apr. 27, 2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)) (emphasis in original).

Duff seeks to establish *Monell* liability against the Village through only the first of the three ways articulated by the *Gable* court. (Dkt. 133 at 9) ("Count IV only puts at issue Maywood's express policy on the use of non-deadly force."). He asserts that the Village's express Use of Force policy caused him to suffer a constitutional injury. An officer's use of force is unconstitutional if, "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987).

Duff contends that the Use of Force policy caused the alleged excessive force. "The express policy theory applies, as the name suggests, where a policy explicitly violates a constitutional right when enforced." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). To prevail on this theory, Duff must "point to [ ] language in the

[Village's] policy that is constitutionally suspect." *Id.* at 381. Duff argues that the Village's Use of Force policy "put[s] no bounds on the amount of non-deadly force that could be used to effect an arrest." (Dkt. 133 at 2). He asserts that the policy expressly allows officers, when it comes to using nondeadly force to effect an arrest, "to do whatever they deem necessary." (Dkt. 133 at 3, 6). Indeed, the Village's Use of Non-Deadly Force policy states: "An officer is justified in using force less than deadly force when the officer reasonably believes it is necessary [ ] [t]o effect an arrest." (Dkt. 127, Ex. 1 (General Order 1.3) at § 1.3.5(A)).

However, reading the entire General Order refutes Duff's contention. *See Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 601 (7th Cir. 2012) ("[W]e begin by looking broadly at the structure of the statute to acquire an understanding of the activity that it regulates. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute.") (citation omitted); *see also Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001) (noting that rules, ordinances, regulations, and policies are all expressions of municipal authority). Section 1.3 admonishes police officers that they "shall use only that force which is reasonably necessary to effectively bring an incident under control, while protecting the lives of officers and other persons." (General Order 1.3 at 1). And, officers "will only use the amount and degree of force reasonably necessary, based upon the totality of the circumstances as reasonably perceived by the officer at the time, to accomplish lawful objectives." (*Id.* ¶ 1.3.2). Section 1.3.2 also references 720 ILCS 5/7-5, which admonishes a police officer that

when using nondeadly force, he is "justified in the use of any force which he reasonably believes to be necessary to effect the arrest and of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest." Further, MPD officers are instructed that "[w]hen the use of force is necessary and appropriate, officers shall, to the extent possible, utilize an escalating/de-escalating scale of options and consider less intrusive means." (*Id.* ¶ 1.3.6). Thus, when considering the Use of Force policy as a whole, it requires officers to use only such nondeadly force that is reasonably necessary under the circumstances they encounter. This admonition is consistent with the standard set by the Supreme Court, which requires that the officer consider the *totality* of circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest of attempting to evade arrest by flight," in determining whether the amount of force to effect an arrest is reasonable. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Duff suggests that the current policy is constitutionally deficient because the prior use-of-force policy "*did* contain express guidance as to when force, including non-deadly force, could be used to effect an arrest." (Dkt. 133 at 4–5) (emphasis in original). But whether the prior policy had more explicit guidance provides no evidence that the current policy is deficient. And Duff has not identified any evidence suggesting that the policy was changed to somehow avoid constitutional use-of-force requirements. Indeed, Duff acknowledges that "no one . . . knows why the new Gen-

eral Order on the use of force was issued by the then Chief Timothy Curry." (*Id.* at 3). This evidence does not establish a genuine issue of fact as to whether the Village's Use of Force Policy violated Duff's constitutional right to be free from unreasonable force.

Moreover, Duff has not demonstrated "an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). In other words, he has not established a genuine issue of fact indicating that the General Order was "the moving force" behind the injury alleged. Duff offers no evidence how the Village's Use of Force policy would cause police officers to use excessive force in making an arrest. *Young*, 2011 WL 1575512, at *2 ("Young does not articulate how the obvious consequence of enacting the Use of Force policy was that the policy would lead Romeoville police officers to use excessive force in violation of the Fourth Amendment.") (citation and alteration omitted). Instead, Duff speculates that the lack of specificity in Section 1.3.5(A)(1) prompted Grandberry and Reilly to use excessive force when they arrested him in February 2014. (Dkt. 133 at 6–7). But mere speculation is insufficient to defeat summary judgment. *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While the nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.") (citation omitted).

Duff contends that individual officer's inability to properly articulate the Fourth Amendment standard creates a genuine issue of material fact as to whether the

General Order was a moving force behind Grandberry and Reilly allegedly using excessive force when they arrested Duff. (Dkt. 133 at 6–8). But simply because MPD officers were unable to succinctly describe how to use reasonable force at their depositions does not mean that they were incapable of properly applying it in a field situation.[2] And attributing municipal liability to the Village because of MPD officers' failure to articulate the proper constitutional standard violates the *Monell* admonition against vicarious liability. *Connick*, 563 U.S. at 60. While Duff's argument may suggest that the Village's excessive force training was inadequate, he explicitly stated in his response brief that he is not pursuing the Village's use-of-force training as a theory of municipal liability. (Dkt. 133 at 9).

Duff has not established a genuine issue of material fact as to whether the Village's Use of Force policy was the moving force behind his alleged constitutional injuries. Summary judgment is granted in the Village's favor on Count IV.

---

[2] Duff also misapprehends Sgt. Fairley's deposition testimony. Fairley, who was the Village's training sergeant, repeatedly stated that he would need to know the entire factual circumstances in which an arrest was taking place in order to determine whether the amount of force utilized was proper (Dkt. 127, Ex. 5 at 20–21, 35, 41–42, 49–50, 64, 66–67), which is consistent with the totality-of-circumstances test established by the Supreme Court, *Graham*, 490 U.S. at 396.

## IV. CONCLUSION

For the reasons stated above, the Village of Maywood's Motion for Summary Judgment on Count IV [125] is **GRANTED**.

E N T E R:

Dated: June 5, 2017

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge